# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRYAN E. RANSOM,<br><br>        Plaintiff,<br><br>    v.<br><br>J. MARTINEZ, et al.,<br><br>        Defendants.<br>_____/ | CASE NO. 1:08-cv-01812-AWI-YNP PC<br><br>ORDER REQUIRING PLAINTIFF EITHER TO FILE AMENDED COMPLAINT OR TO NOTIFY COURT OF WILLINGNESS TO PROCEED ONLY ON CLAIMS FOUND TO BE COGNIZABLE<br><br>(Doc. 1)<br><br>RESPONSE DUE WITHIN 30 DAYS |

Plaintiff Bryan E. Ransom ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff also claims that Defendants violated the Religious Freedom Restoration Act ("RFRA") and the Religious Land Use and Institutionalized Person's Act ("RLUIPA") and Plaintiff raises a claim for "[t]he tort of sexual harassment in violation of CCR Title 15 § 3287(b) and § 3401.5(a)." Plaintiff is in the custody of the California Department of Corrections and Rehabilitation ("CDCR") and is incarcerated at the California State Prison in Corcoran, California ("CSP-Corcoran"). Plaintiff is suing under section 1983 for the violation of his rights under the First and Fourth Amendments. Plaintiff names J. Martinez (correctional sergeant), A. C. Quinones (correctional lieutenant), D. Ortiz (associate warden), D. Adams (warden), and T. Garrison (licensed clinician social worker) as defendants. For the reasons set forth below, the Court finds that Plaintiff states some cognizable claims. Plaintiff will be ordered to either file an amended complaint which cures the deficiencies in his non-cognizable claims, or to notify the Court of his willingness to proceed only on the cognizable claims.

I.   **Screening Requirement**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

In determining whether a complaint fails to state a claim, the Court uses the same pleading standard used under Federal Rule of Civil Procedure 8(a). Under Rule 8(a), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570). "[A] complaint [that] pleads facts that are 'merely consistent with' a defendant's liability . . . 'stops short of the line between possibility and plausibility of entitlement to relief.'" Id. (quoting Twombly, 550 U.S. at 557). Further, although a court must accept as true all factual allegations contained in a complaint, a court need not accept a plaintiff's legal conclusions as true. Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (quoting Twombly, 550 U.S. at 555).

II.   **Background**

On August 20, 2007, Defendant D. Adams implemented a policy that required Plaintiff to undergo an unclothed search in plain view of others before he is removed from the outside exercise cages. Plaintiff complains that he has been forced to strip naked in front of female staff members and other inmates. Plaintiff complains that the policy violated California regulations. Plaintiff filed

2

a complaint about the policy and was interviewed by Defendants J. Martinez and A.C. Quinones. Plaintiff's requests to rescind the policy were denied.

On September 17, 2007, Plaintiff was in the outside exercise cages and was ordered to strip in front male and female staff members and other inmates. Plaintiff refused. Plaintiff demanded to be stripped in the building where others could not see him. Plaintiff was told that the orders to strip came from Defendant J. Martinez. Plaintiff demanded to see Martinez. Martinez told Plaintiff that if he did not strip out, Martinez would pepper spray Plaintiff and take him off the "Ramadan List." Plaintiff continued to refuse. Martinez began setting up a video camera to record the threatened cell extraction. Defendant T. Garrison arrived to do a psychiatric interview. Garrison convinced Plaintiff to strip out.

Plaintiff claims that his right to bodily privacy under the Fourth Amendment was violated by the strip search. Plaintiff also alleges that his rights under the Free Exercise Clause of the First Amendment and the RFRA and RLUIPA were violated because stripping in front of others contravened his religious principles as a Muslim. Plaintiff also raises a claim for the "tort of sexual harassment in violation of CCR Title 15 § 3287(b) and § 3401.5(a)." Plaintiff also claims that J. Martinez and T. Garrison's actions constituted retaliation against Plaintiff's exercise of his rights under the First Amendment.

**III.   Discussion**

**A.   Fourth Amendment Claims**

Plaintiff claims that Adams' policy of conducting strip searches whenever an inmate was removed from the outside exercise cages violated Plaintiff's rights under the Fourth Amendment. The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ." The right against unreasonable searches and seizures extends to incarcerated prisoners. Nunez v. Duncan, 591 F.3d 1217, 1227 (9th Cir. 2010); Michenfelder v. Sumner, 860 F.2d 328, 332 (9th Cir. 1988). "[H]owever, the reasonableness of a particular search is determined by reference to the prison context." Michenfelder, 860 F.2d at 332. The reasonableness of a particular search is tested by applying the balancing test set forth in Bell v. Wolfish, 441 U.S. 520 (1979). Nunez, 591 F.3d at

3

1227. Under <u>Bell</u>, the Courts must consider 1) the scope of the particular intrusion, 2) the manner in which it is conducted, 3) the justification for initiating it, and 4) the place in which it is conducted. <u>Bell</u>, 441 U.S. at 559.

The validity of the search policy is also analyzed under the standards set forth in <u>Turner v. Safley</u>, 482 U.S. 78 (1987). <u>See</u> <u>Nunez</u>, 591 F.3d at 1227; <u>Byrd v. Maricopa County Sheriff's Dept.</u>, 565 F.3d 1205, 1220-21 (9th Cir. 2009). Under <u>Turner</u>, a prison regulation "is valid if it is reasonably related to legitimate penological interests." <u>Turner</u>, 482 U.S. at 89. The four factors relevant in determining the reasonableness of a prison regulation are 1) whether there is a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it; 2) whether there are alternative means of exercising the right that remain open to prison inmates; 3) the impact accommodation of the asserted constitutional right will have on guards and other inmates and on the allocation of prison resources generally; and 4) the absence of ready alternatives. <u>Turner</u>, 482 U.S. at 89-91.

Plaintiff challenges the reasonableness of the search policy because it forces him to strip in front of female staff members and in front of "notorious homosexuals, voye[u]rs and masturbaters." Plaintiff presents no factual allegations or arguments with respect to the justification for the searches, i.e., whether there is a reasonable threat of inmates smuggling contraband from the outside exercise cages that warrants strip searches. "Controlling contraband within a prison is a legitimate penological interest. . . ." <u>Nunez</u>, 591 F.3d at 1127-28. Numerous cases have acknowledged a legitimate penological interest in controlling contraband in institutional settings. <u>See</u> <u>Bull v. City and County of San Francisco</u>, Nos. 06-15566, 05-17080, 2010 WL 431790 (9th Cir. Feb. 2, 2010) (acknowledging legitimate penlogical interest in controlling contraband in local jails); <u>Nunez</u>, 591 F.3d at 1228; <u>Byrd</u>, 565 F.3d at 1221 ("There is no dispute that the County's security-related need to respond to reports of contraband and fighting . . . is a 'legitimate governmental interest' . . . [and] are rationally connected to, and a valid justification for, conducting the pad down and partial strip searches"); <u>Michenfelder v. Sumner</u>, 860 F.2d 328, 332 ("so long as a prisoner presented with the opportunity to obtain contraband or a weapon while outside of his cell, a visual strip search has a legitimate penological purpose");.

4

Plaintiff's primary challenge is not the justification for the searches themselves, but the place where the searches are conducted. Plaintiff requested that the searches take place somewhere that is not in plain view of others. Since Plaintiff makes no plausible allegations challenging the scope[1] or justification for the strip searches, the Court focuses its inquiry on whether Plaintiff's Fourth Amendment rights were violated by reason of the manner and the place in which the searches were conducted. The Court construes Plaintiff's claims as alleging that, while the searches themselves may be reasonably related to the legitimate penological interest in controlling contraband, the fact that the searches took place in the outside exercise cages in front of female correctional staff and other inmates was not reasonably related to any legitimate penological interests.

The Ninth Circuit has "recognized that the 'desire to shield one's unclothed figure[] from view of strangers, and particularly strangers of the opposite sex, is impelled by elementary self-respect and personal dignity." Byrd v. Maricopa County Sheriff's Dept., 565 F.3d 1205, 1222 (9th Cir. 2009) (citing York v. Story, 324 F.2d 450, 455 (9th Cir. 1963)). The Ninth Circuit has also stated that "[w]hile we have not foreclosed the possibility that a cross-gender search could violate an incarcerated person's constitutional rights, we have noted that 'our prior case law suggests that prisoners' legitimate expectations of bodily privacy from persons of the oppose sex are exteremely limited.'" Id. (quoting Jordan v. Gardner, 986 F.2d 1521, 1524 (1993)). The Ninth Circuit has "never held that a cross-gender search in a prison setting violated an inmate's Fourth Amendment rights." Id.

In Byrd, the Ninth Circuit upheld a cross-gender search challenged under the Fourth Amendment. The plaintiff in Byrd ("Byrd") was a pretrial detainee being held in a county jail. Byrd, 565 F.3d at 1208. Jail supervisors conducted a coordinated search of an entire housing unit due to suspected contraband and fights. Id. at 1208-1209. Byrd was ordered to remove all his clothing except his boxer shorts and was searched in a room with 25-30 cadets and 10-15 uniformed detention officers. Id. at 1209. Byrd was searched by a female training cadet who ran her hands throughout

---

[1] Plaintiff makes no allegations or arguments that the searches themselves were unreasonable with respect to the scope of the areas searched or the manner in which they are conducted, in terms of the degree of physical invasiveness.

5

1  Byrd's body, including a frisk of Byrd's genitals through his boxer shorts. Id. Byrd also claimed
2  that he suffered from a history of sexual abuse that made the cross-gender aspect of the search
3  particularly traumatic. Id. at 1216. The search was upheld over Fourth Amendment challenges
4  despite the fact that the nearby male officers were readily available to perform the search. Id. at
5  1208.

6       In Michenfelder, the Ninth Circuit upheld a strip search policy that called for visual body
7  cavity searches whenever an inmate left or returned to a unit, as well as whenever an inmate travels
8  under escort within the unit, including leaving and returning from sick call, recreation, disciplinary
9  hearings, and visits. Michenfelder, 860 F.2d at 332. The frequency of strip searches in Michenfelder
10 was "very high." Id. The plaintiff in Michenfelder challenged the location of the strip searches,
11 arguing that they Constitution requires them to be conducted in the privacy of the prisoners' cells,
12 rather out in the hallway. Id. The Michenfelder plaintiff attempted to demonstrate the irrationality
13 of the location based on the fact that other units still conducted visual strip searches through closed
14 cell doors. Id. The Ninth Circuit upheld the policy based on the defendants' assertion that
15 conducting the searches through the cell door was problematic. Id. The Ninth Circuit also upheld
16 the policy despite the plaintiff's argument that the searches were conducted in the view of female
17 correctional officers and visitors. Id. at 333-334. The court cited the interest in providing equal
18 employment opportunities to women and the security interest in deploying available staff effectively
19 as valid penological interests. Id. at 334.

20      The only Ninth Circuit case that found cross-gender searches to be unconstitutional is Jordan
21 v. Gardner, 986 F.2d 1521 (9th Cir. 1993). In Jordan, the court held that a prison policy that required
22 male guards to conduct random, non-emergency, suspicion-less clothed body searches of female
23 prisoners was cruel and unusual under the Eighth Amendment. Id. at 1522-23. The facts in Jordan
24 involved male guards conducting clothed body searches of female prisoners that involved physical
25 intrusive tactile searches of the crotch and breast area. Id. at 1523. The Court found that the
26 searches were cruel and unusual because several inmates had long histories of sexual abuse by men,
27 and one suffered severe distress during a search: prison officials had to pry her fingers loose from
28 the bars she had grabbed during the search and she vomited after returning to her cell block. Id. The

6

1  Court declined to analyze the claims under the Fourth Amendment because the policy was prohibited
2  under the Eighth Amendment. However, the court did note that "prisoners' legitimate expectations
3  of bodily privacy from persons of the opposite sex are extremely limited." Id. at 1524.

4        Despite the substantial amount of authority that has upheld cross-gender strip searches in the
5  past, Plaintiff alleges some facts that distinguish his circumstances from cases such as Byrd, and
6  Michenfelder. Plaintiff alleges that the unclothed body searches took place in "plain view" of others,
7  including female staff members and other inmates. Plaintiff alleges that the searches took place
8  frequently--every time he left the outside exercise cages. The Court finds that, at this stage in
9  litigation, Plaintiff has stated sufficient facts to state a claim under section 1983 for the violation of
10 his rights under the Fourth Amendment. Plaintiff states a cognizable claim against Defendant
11 Adams for implementing the strip search policy, against Defendants Martinez, Quinones, and Ortiz
12 for upholding the policy, and against Defendant Martinez and Garrison for carrying out the policy.

13       **B.**    **First Amendment and RFRA/RLUIPA Claims**

14       Plaintiff claims that Defendants violated Plaintiff's rights under the Free Exercise Clause of
15 the First Amendment. The First Amendment of the United States Constitution provides that
16 "Congress shall make no law respecting the establishment of religion, or prohibiting the free exercise
17 thereof . . . ." U.S. Const., amend. I. "Inmates clearly retain protections afforded by the First
18 Amendment . . . including its directive that no law shall prohibit the free exercise of religion".
19 O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987) (citing Pell v. Procunier, 417 U.S. 817, 822
20 (1974); Cruz v. Beto, 405 U.S. 319 (1972)). However, "'[l]awful incarceration brings about the
21 necessary withdrawal or limitation of many privileges and rights, a retraction justified by the
22 considerations underlying our penal system.'" Id. (quoting Price v. Johnson, 334 U.S. 266, 285
23 (1948)). "In order to establish a free exercise violation, [a prisoner] must show the defendants
24 burdened the practice of his religion, by preventing him from engaging in conduct mandated by his
25 faith, without any justification reasonably related to legitimate penological interests." Freeman v.
26 Arpaio,125 F.3d 732, 736 (9th Cir. 1997). Plaintiff must show that his practice is both "'sincerely
27 held'" and "'rooted in religious belief.'" Shakur v. Schriro, 514 F.3d 878, 884 (9th Cir. 2008)
28 (quoting Malik v. Brown, 16 F.3d 330, 333 (9th Cir. 1994)). "[A] prisoner inmate retains those First

7

Amendment rights that are not inconsistent with his [or her] status as a prisoner or with the legitimate penological objectives of the corrections system." Pell v. Procunier, 417 U.S. 817, 822 (1974). A regulation that impinges on First Amendment rights "is valid if it is reasonably related to legitimate penological interests." Turner v. Safley, 482 U.S. 78, 89 (1987).

Plaintiff also claims that Defendants violated the Religious Freedom Restaurant Act ("RFRA"). The RFRA has been declared unconstitutional as applied to the states. City of Boerne v. Flores, 521 U.S. 507, 536 (1997). The Religious Land Use and Institutionalized Person's Act ("RLUIPA") was enacted to replace the RFRA after the Supreme Court declared the RFRA unconstitutional. See Cutter v. Wilkinson, 544 U.S. 709, 715 (2005). Therefore, the Court will analyze Plaintiff's claims under the RLUIPA.

The RLUIPA provides that:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person--
> (1) is in furtherance of a compelling governmental interest; and
> (2) is the least restrictive means of furthering that compelling governmental interest.

Thus, in order to demonstrate a violation of the RLUIPA, Plaintiff must allege that Defendants burdened the exercise of Plaintiff's religion and the burden was not in furtherance of a compelling governmental interest, or was no the least restrictive means of furthering that compelling governmental interest.

Plaintiff claims that his religious exercise was burdened because being required to strip in front of others is an "affront to his . . . religious principles under the practice of Islam." Plaintiff alleges that Defendants' actions did not serve any legitimate penological interests or institutional goals. While Plaintiff's conclusions may be overly broad given the recognition of legitimate penological interests justifying strip searches in precedent, see discussion supra Part III.A, Plaintiff may be able to demonstrate that the decision to conduct the strip searches in plain view of female staff members and other inmates was not related to any legitimate penological interests. Plaintiff claims that he could have been searched in a more private setting indoors. Plaintiff's allegations

8

plausibly suggest that the strip search policy was not the least restrictive means of furthering any governmental interest in controlling contraband in the prison.  Plaintiff states cognizable claims under the Free Exercise Clause of the First Amendment, as well as cognizable claims for the violation of the RLUIPA.

Plaintiff also asserts that Defendants Martinez and Garrison retaliated against Plaintiff for exercising his rights under the First Amendment.  In the prison context, allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a section 1983 claim.  Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985); see also Valandingham v. Bojorquez, 866 F.2d 1135 (9th Cir. 1989); Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995).  "[A] viable claim of First Amendment retaliation entails five basic elements:  (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal."  Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005).  An allegation of retaliation against a prisoner's First Amendment right to file a prison grievance is sufficient to support a claim under section 1983.  Bruce v. Ylst, 351 F.3d 1283, 1288 (9th Cir. 2003).

The Court finds that Plaintiff's allegations are sufficient to state a cause of action against Defendants Martinez and Garrison for directly violating the Free Exercise Clause of the First Amendment.  However, Plaintiff has not stated facts that suggest Martinez or Garrison retaliated against Plaintiff for exercising his rights under the First Amendment.  The facts alleged by Plaintiff indicate that Martinez and Garrison threatened Plaintiff with pepper spray because Plaintiff was disobeying orders and refused to submit to a strip search.  Although Plaintiff's refusal was allegedly motivated by his religious beliefs, there is no indication that Martinez or Garrison's threats were motivated by Plaintiff's religious beliefs.  The threat of disciplinary action was not a direct response to Plaintiff's religious beliefs and cannot be characterized as "retaliation."  The facts suggest that Martinez and Garrison threatened to extract Plaintiff with pepper spray because Plaintiff refused to submit to a strip search, and the fact that Plaintiff's refusal to strip was grounded in his religious

///

beliefs bore no relevance to Martinez and Garrison's actions. Therefore, Plaintiff does not state a cognizable claim for retaliation against Defendants Martinez or Garrison.

### C. Sexual Harassment Claims

Plaintiff asserts claims for "[t]he tort of sexual harassment in violation of CCR Title 15 § 3287(b) and § 3401.5(a)." The Court is unaware of any general cause of action for "the tort of sexual harassment." If such a cause of action exists, Plaintiff may amend his claims and identify the statute or law that gives rise to his cause of action. Plaintiff cites violations of two California regulations: California Administrative Code title 15 sections 3287(b) and 3401.5(a). Section 3287(b) prohibits unclothed body inspections conducted by employees of the opposite sex except under emergency conditions, and states that unclothed body inspections of inmates should be conducted outside the view of others "[w]henever possible." Section 3401.5(a) prohibits employee sexual misconduct. Neither regulation provides for any private cause of action against violators of the regulations. In other words, Plaintiff has not identified any statute, regulation, or law that states that he may sue a prison official who violates those regulations for damages in a civil action. Section 3401.5(b) explicitly identifies the penalties for sexual misconduct by institutional employees, which include disciplinary action and possible criminal prosecution. The section does not mention the existence of any civil cause of action. Thus, Plaintiff fails to state any cognizable claims under state law for "sexual harassment."

### IV. Conclusion and Order

Plaintiff's complaint states cognizable claims against Defendants J. Martinez, A. C. Quinones, D. Ortiz, D. Adams, and T. Garrison for the violation of Plaintiff's rights under the First and Fourth Amendments, and for violating the RLUIPA. Plaintiff's complaint fails to state claims against any other defendants. The Court will provide Plaintiff with the opportunity to file an amended complaint curing the deficiencies identified by the Court in this order. Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987). Plaintiff may not change the nature of this suit by adding new, unrelated claims in his amended complaint. George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints).

///

If Plaintiff does not wish to file an amended complaint and is agreeable to proceeding only on the claims identified in this order as cognizable, Plaintiff may so notify the Court in writing, and the Court will issue a recommendation for dismissal of the other claims and defendants, and will forward Plaintiff five (5) summonses and five (5) USM-285 forms for completion and return. Upon receipt of the forms, the Court will direct the United States Marshal to initiate service of process.

If Plaintiff opts to amend, his amended complaint should be brief. Fed. R. Civ. P. 8(a). Plaintiff must identify how each individual defendant caused the deprivation of Plaintiff's constitutional or other federal rights: "The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." Leer v. Murphy, 844 F.2d 628, 633 (9th Cir. 1988). With respect to exhibits, while they are permissible if incorporated by reference, Fed. R. Civ. P. 10(c), they are not necessary in the federal system of notice pleading, Fed. R. Civ. P. 8(a). In other words, it is not necessary at this stage to submit evidence to prove the allegations in Plaintiff's complaint because at this stage Plaintiff's factual allegations will be accepted as true.

Although Plaintiff's factual allegations will be accepted as true and that "the pleading standard Rule 8 announces does not require 'detailed factual allegations,'" "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

Finally, Plaintiff is advised that an amended complaint supercedes the original complaint. Forsyth v. Humana, Inc., 114 F.3d 1467, 1474 (9th Cir. 1997); King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987). The amended complaint must be "complete in itself without reference to the prior or superceded pleading." Local Rule 15-220. Plaintiff is warned that "[a]ll causes of action alleged in an original complaint which are not alleged in an amended complaint are waived." King, 814 F.2d at 567 (citing London v. Coopers & Lybrand, 644 F.2d 811, 814 (9th Cir. 1981)); accord Forsyth,

///

114 F.3d at 1474. In other words, even the claims that were properly stated in the original complaint must be completely stated again in the amended complaint.

Based on the foregoing, it is HEREBY ORDERED that:

1. The Clerk's Office shall send Plaintiff a civil rights complaint form;
2. Within **thirty (30) days** from the date of service of this order, Plaintiff must either:
   a. File an amended complaint curing the deficiencies identified by the Court in this order, or
   b. Notify the Court in writing that he does not wish to file an amended complaint and wishes to proceed only against Defendants J. Martinez, A. C. Quinones, D. Ortiz, D. Adams, and T. Garrison for the violation of Plaintiff's rights under the First and Fourth Amendments, and for violating the RLUIPA.; and
3. If Plaintiff fails to comply with this order, this action will be dismissed for failure to obey a court order.

IT IS SO ORDERED.

**Dated:   March 24, 2010**          /s/ Sandra M. Snyder
                                    UNITED STATES MAGISTRATE JUDGE